**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE

Ricky Miller,

   Plaintiff,

v.

Paul Lagana, et al.

   Defendants.

Civil Action No. 15-2510(SRC)

**OPINION**

APPEARANCES:

Ricky Miller
Bayside State Prison
P.O. Box F1, 4293 Route 47
Leesburg, NJ 08327
 Plaintiff pro se

Michael R. Ricciardulli
RUPRECHT HART WEEKS & RICCIARDULLI, LLP
53 Cardinal Drive – Suite 1
Westfield, New Jersey 07090
 Counsel for Defendant University of Medicine
 and Dentistry of New Jersey ("UMDNJ")

**CHESLER**, District Judge:

  Plaintiff, an inmate currently incarcerated in Bayside State Prison in Leesburg, New Jersey, filed a civil rights complaint in this Court on April 8, 2015. (Compl., ECF No. 1.) This matter comes

before the Court upon Defendant UMDNJ's[1] "Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim Pursuant to Rule 12(b)(6)," ("Def's Brief") filed on November 23, 2015. (Def's Brief, ECF No. 25-1.) Plaintiff filed a "Memorandum of Law in Opposition to Defendant(s) UMDNJ Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim Pursuant to Rule 12(b)(6)" ("Pl's Brief") (ECF No. 28.) This Court has considered the pleadings, motions, briefs and supporting documents, and will decide the motion on the papers, pursuant to Federal Rule of Civil Procedure 78(b). For the reasons explained below, the Court will deny the motion to dismiss.

I. **BACKGROUND**

The Court accepts the following factual allegations in the complaint as true for purposes of the present motion to dismiss. Plaintiff was an inmate in Northern State Prison in April 2014, when a sick prisoner was placed in the same cell with him. After the sick prisoner was moved to the prison infirmary, Plaintiff developed flu-like symptoms and requested medical treatment, which was denied.[2]

On May 1, 2014, Plaintiff was found in his cell, covered in blood. He was taken to University Hospital-UMDNJ, where he was

---

[1] UMDNJ is now known as Rutgers, the State University of New Jersey. (Notice of Appearance, ECF No. 24.)
[2] Plaintiff did not allege who denied him medical treatment on this occasion.

2

treated for suicide attempt and pneumonia. He was discharged from the emergency room with prescriptions for "levaquin x 10 days and ultram prn." When Plaintiff was transferred to the infirmary in Northern State Prison, RN Okparaeke failed to include pneumonia in his diagnosis list, and did not include heavy coughing as a respiratory symptom.

Subsequently, Correctional Officers stripped Plaintiff of clothing, gave him a suicide protection vest, and put him in a cell with no sheets, pillow or blanket, and left him to sleep on a dirty, rusty metal bed, under constant watch. Plaintiff saw Dr. Salem and told her that he had pneumonia, asking for clothing and bedding. Dr. Salem explained it was NJDOC policy to remove clothing and bedding from the cell of a prisoner on suicide watch.

RN Macri examined Plaintiff on May 2, 2014, but failed to acknowledge his pneumonia or provide adequate treatment for it. Plaintiff was moved to "SU" but the "no clothing or bedding" restriction was continued. On May 5, 2014, Plaintiff was taken to the emergency room at University Hospital-UMDNJ. His diagnoses included acute CHF, pulmonary edema, pleural effusion/pneumonia, acute respiratory failure and "LUL necrotizing MRSA PNA complicated by empyema."

Plaintiff required a right thoracotomy with placement of chest tubes and a temporary epidural catheter on May 24, 2014. He was released from the hospital on May 30, 2014, with prescriptions

for Vancomycin for four weeks, and Norco for severe pain for two weeks. At Northern State Prison, RN Okparaeke transcribed the prescriptions into Plaintiff's medical chart but failed to include the Norco. Upon return to the prison infirmary, Plaintiff was again stripped of his clothing and bedding.

Plaintiff had an appointment to see Dr. Lovoulos at UMDNJ on June 11, 2014, but NJDOC did not transport him there. Plaintiff alleged that on June 13, 2014, Physician Specialist Michelle Borowski discontinued Plaintiff's Vancomycin for MRSA PNA, only two weeks after his release from the hospital. Plaintiff alleged he continues to suffer symptoms related to his bout of MRSA and pneumonia.

Defendant UMDNJ correctly notes that it is not listed specifically in the "Parties" section of Plaintiff's Complaint, although it appears as a defendant in the caption, and several UMDNJ employees are named as defendants. (Def's Brief, ECF No. 25-1 at 6.) Plaintiff did not allege any specific claims against UMDNJ as an entity, but he alleged that employees of UMDNJ followed a policy or custom which "allows prisoners with a diagnosis of pneumonia to be placed in a cell stripped of all clothing, except a suicide vest [sic], with no bedding or mattress." (Id. citing Compl., p. 5-12.)

Defendant UMDNJ also contends that Plaintiff's medical malpractice claims against it are insufficient to provide it with

4

notice of the claims. (Id. at 7.) Plaintiff opposed the motion to dismiss § 1983 and state tort claims against UMDNJ. (Pl's Brief, ECF No. 28.) Plaintiff relies on his allegations against UMDNJ employees.

## II. MOTION TO DISMISS STANDARD

Plaintiff is proceeding in forma pauperis in this civil action. The Court must liberally construe the complaint in Plaintiff's favor because he is proceeding pro se. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The Court must also "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

In Ashcroft v. Iqbal, the Supreme Court revisited the standard for summary dismissal of a complaint that fails to state a claim upon which relief may be granted. 556 U.S. 662 (2009). The Court examined the pleading standard under Federal Rule of Civil Procedure 8(a)(2), noting that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 677. However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements

of a cause of action will not do.'" Id. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A complaint must be dismissed for failure to state a claim if it does not state a plausible claim for relief. Id. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679 (citations omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. Finally, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002).

### III. DISCUSSION

#### A. Eighth Amendment Claims

Plaintiff brought this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in

6

>    equity, or other proper proceeding for redress
>    . . . .

To state a claim for relief under § 1983, a plaintiff must allege two things; first, the violation of a right secured by the Constitution or laws of the United States; and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Iqbal, 556 U.S. 662, 676 (2009). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. Id.

"'[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Helling v. McKinney, 509 U.S. 25, 31 (1993)). The Eighth Amendment imposes duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care . . . " Id. (citing Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts

7

from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837.

To state a claim based on a policy or custom that resulted in a constitutional violation, a plaintiff must allege one of the following. First, "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." <u>Natale v. Camden County Corr. Facility</u>, 318 F.3d 575, 584 (3d Cir. 2003) (quoting <u>Board of County Com'rs of Bryan County, Okl. v. Brown</u>, 520 U.S. 397, 417 (1997) (Souter, J., dissenting)). Second, "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." <u>Id.</u> Third, that a policy or custom exists where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" <u>Id.</u> (quoting <u>Bryan County</u>, 520 U.S. at 417-18 (quoting <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378 (1989)).

Plaintiff alleged the defendant employees of UMDNJ followed "a policy or custom that allows prisoners with a diagnosis of pneumonia to be placed in a cell stripped of all clothing, except

8

a suicide vest [sic], with no bedding or mattress, with a CO posted at the cell door under constant watch." (Compl., ¶¶7-12, ECF No. 1 at 3-4.) Plaintiff also alleged his clothing and bedding were removed by NJDOC officers pursuant to NJDOC policy. (Compl., p. 21-22.) Therefore, UMDNJ moves to dismiss Plaintiff's claims against it because liability under 42 U.S.C. § 1983 cannot be predicated upon a theory of respondeat superior, and Plaintiff has failed to state a <u>Monell</u> claim against UMDNJ as an entity. (<u>Id.</u>)

Implicit in Plaintiff's allegation that UMDNJ employees were deliberately indifferent to his pneumonia is that they failed to exercise their professional medical judgment and blindly followed an NJDOC policy that may have been contrary to his medical needs. Therefore, the complaint sufficiently states a deliberate indifference claim against UMDNJ.

**B.   New Jersey Medical Malpractice Claim**

The elements of a medical malpractice action in New Jersey are: "'(1) the applicable standard of care; (2) a deviation from that standard of care; and (3) that the deviation proximately caused the injury.'" <u>Teilhaber v. Greene</u>, 320 N.J. Super. 453, 465 (N.J. Sup. Ct. App. Div. Apr. 23, 1999) (quoting <u>Gardner v. Pawliw</u>, 150 N.J. 359, 375 (N.J. 1997)). "Respondeat superior and vicarious liability are the theories under which courts 'impose liability vicariously solely on the basis of the evidence of an employer-employee relationship with a tortfeasor.'" <u>Romano v. Brown</u>, Civ.

9

No. 1:04-cv-4346(FLW), 2006 WL 2376913, at *6 n.5 (quoting Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (quoting Monell v. Dep't of Soc. Serv. of City of New York, 436 U.S. 658, 691 (1978)).

Defendant UMDNJ asserts that Plaintiff fails to state a medical malpractice claim against it because his claims are too vague to put it on notice. To the contrary, Plaintiff alleged sufficient facts, taken as true at this early stage of the proceedings, which provide notice of a claim of medical malpractice.

Plaintiff alleges that when he was admitted to the prison infirmary on May 1, 2014, after being released from the hospital with a diagnosis of pneumonia, RN Okparaeke failed to include pneumonia in the diagnosis list and heavy coughing as a symptom, leading to his inadequate treatment for pneumonia. (Compl., 20.) On May 2, 2014, RN Macri examined him but "failed to acknowledge the pneumonia, failing to provide adequate medical treatment." (Compl., ¶24.) Dr. Rajiv discharged Plaintiff from the prison infirmary, although Plaintiff had chest pains and cough. (Compl., ¶25.) Furthermore, Plaintiff alleges it was negligent for UMDNJ employees to allow him to be placed in a cell stripped of bedding and clothing when he was suffering from pneumonia, and that as a result, his pneumonia worsened to the point of acute respiratory failure. (Compl., ¶¶22, 27.)

It is plausible that if pneumonia was left off Plaintiff's medical chart, he was not treated for it. Even after he informed medical providers that he was suffering from pneumonia, he alleged they would not provide him with bedding or clothing. Plaintiff was readmitted to the hospital on May 5, 2014, and diagnosed with "acute CHF," pulmonary edema, pleural effusion/pneumonia, and acute respiratory failure. (Compl., ¶¶28-29.) Plaintiff required right lung surgery. (Compl., ¶33.)

After the May 5, 2014 hospitalization, Plaintiff returned to the prison on May 30, 2014. He alleges RN Okparaeke failed to accurately transcribe his prescription for the pain medication Norco, and it was not provided to Plaintiff that day. (Compl., ¶¶34-36.) Although Plaintiff was prescribed a four-week course of Vancomycin, Physician Specialist Michelle Borowski discontinued it after only two weeks. (Compl., ¶¶40-41.) Plaintiff continues to suffer symptoms from "MRSA pneumonia." (Compl., ¶47.)

To establish a medical malpractice claim in New Jersey a plaintiff must allege (1) the applicable standard of care, (2) deviation from that standard of care; and (3) that the deviation proximately caused the injury." Gardner v. Pawliw, 150 N.J. 359, 375 (1997). Plaintiff adequately alleged what the above-described UMDNJ employees did or failed to do that breached the standard of care for treatment of pneumonia and MRSA, and allegedly caused his pneumonia and MRSA to continue and worsen.

11

### III. Plaintiff's Application for Pro Bono Counsel

Plaintiff filed a motion to appoint pro bono counsel, alleging he cannot afford counsel, and he lacks the ability to prosecute a complex medical case that will require expert testimony. (ECF No. 22.) The Court finds that the case has potential merit and is of sufficient complexity that Plaintiff, a pro se prisoner, would have a very difficult task to represent himself. Therefore, the Court will grant Plaintiff's application for appointment of pro bono counsel.

### IV. CONCLUSION

For the reasons discussed above, the Court will deny UMDNJ's motion to dismiss. The Court will grant Plaintiff's application for pro bono counsel.

DATED: 3-17-16

_____
STANLEY R. CHESLER
UNITED STATES DISTRICT JUDGE